

Colin Prince
Chief Appellate Attorney
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606

# United States District Court
## Hon. Stanley A. Bastian

| | |
|---|---|
| United States, | No. 09-cr-2014-SAB |
| Plaintiff, | Motion to Reduce Sentence |
| v. | |
| Javier Hart, | |
| Defendant. | Noted: May 31, 2022[1] |

---

[1] Mr. Hart does not currently request oral argument but would of course be available should the Court find argument beneficial.

# TABLE OF CONTENTS

I.    Introduction...................................................................................................1

II.   Background ................................................................................................... 2

      A.    Mr. Hart goes to trial based on horrific mis-advice from counsel, faces mandatory life, and stipulates to a 30-year sentence..................................... 2

      B.    Mr. Hart was guilty of unremarkable drug dealing. .......................................7

      C.    Mr. Hart's post-sentencing procedural history. ........................................... 8

III.  Discussion ..................................................................................................... 9

      A.    Congress intended district courts to use § 3582 to review "unusually long sentences"—it said so directly. ................................................................... 11

      B.    Mr. Hart has an extraordinarily long and unusual sentence. ...................... 13

            1.    The 30-year sentence was imposed in an extraordinary and unusual fashion. ................................................................................................ 13

            2.    The 30-year sentence is extraordinary long compared to other drug offenders.............................................................................................14

            3.    The 30-year sentence is extraordinary due to the nature of his two prior convictions that triggered the mandatory-life sentence. ..........14

            4.    The 30-year sentence is extraordinarily disparate from post-First Step Act sentences. ............................................................................. 15

      C.    The § 3553(a) factors favor a sentence reduction. ......................................19

      D.    This is not a disguised collateral-attack. ....................................................23

IV.   Conclusion................................................................................................... 26

1

# TABLES OF AUTHORITIES

2

**Cases**

3

*Gideon v. Wainwright*,
    372 U.S. 335 (1963) .................................................................... 21

4

*Ilina v. Zickenfoose*,
    591 F. Supp. 2d 145 (D. Conn. 2008) ........................................ 23

5

*Levine v. Apker*,
    455 F.3d 71 (2d Cir. 2006) ......................................................... 23

6

*Muth v. Fondren*,
    676 F.3d 815 (9th Cir. 2012) ...................................................... 22

7

*Parke v. Raley*,
    506 U.S. 20 (1992) ...................................................................... 23

8

*Setser v. U.S.*,
    566 U.S. 231 (2012) .................................................................... 23

9

*State v. Blake*,
    197 Wash. 2d 170 (2021) ............................................................. 8

10

*U.S. v. Almontes*,
    2020 WL 1812713 (D. Conn. April 9, 2020) ............................. 10

11

*U.S. v. Armstrong*,
    2020 WL 4366015 (S.D. Cal. July 30, 2020) ............................. 19

12

*U.S. v. Aruda*,
    993 F.3d 797 (9th Cir. 2021) ........................................................ 9

13

*U.S. v. Brooker*,
    976 F.3d 228 (2d Cir. 2020) .................................................... 9, 10

14

*U.S. v. Brown*,
    457 F. Supp. 3d 691 (S.D. Iowa Apr. 29, 2020) ........................ 17

15

*U.S. v. Bryant*,
    2020 WL 2085471 (D. Md. Apr. 30, 2020) ................................ 17

16

*U.S. v. Cantu-Rivera*,
    2019 WL 2578272 (S.D. Tex. June 24, 2019) ............................ 16

17

*U.S. v. Hope*,
    2020 WL 2477523 (S.D. Fla. Apr. 10, 2020) ............................. 16

18

*U.S. v. Jones*,
    482 F. Supp. 3d 969 (N.D. Cal. 2020) ....................................... 17

19

*U.S. v. LaFlora*,
    2021 WL 1597948 (D. Kan. Apr. 23, 2021) ............................... 16

*U.S. v. Ledezma-Rodriguez,*
    472 F. Supp. 3d 498 (S.D. Iowa 2020) ............................................ 16

*U.S. v. Lii,*
    528 F. Supp. 3d 1153 (D. Haw. 2021) ............................................ 15

*U.S. v. Macfarlane,*
    438 F. Supp. 3d 125 (D. Mass. 2020) ............................................ 19

*U.S. v. Maumau,*
    993 F.3d 821(10th Cir. 2021) ............................................ 15

*U.S. v. McCoy,*
    981 F.3d 271 (4th Cir. 2020) ............................................ 15, 16

*U.S. v. McGee,*
    2021 WL 1660251 (N.D. Cal. April 26, 2021) ............................................ 10

*U.S. v. McPherson,*
    454 F. Supp. 3d 1049 (W.D. Wash. 2020) ............................................ 17

*U.S. v. Mondaca,*
    2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) ............................................ 16

*U.S. v. Moore,*
    2021 WL 6071628 (10th Cir. Dec. 21, 2021) ............................................ 16

*U.S. v. Noriega,*
    40 F. Supp. 2d 1378 (S.D. Fla. 1999) ............................................ 19

*U.S. v. Owens,*
    996 F.3d 755 (6th Cir. May 6, 2021) ............................................ 10

*U.S. v. Spano,*
    476 F.3d 476 (7th Cir. 2007)............................................ 19

*U.S. v. Tucker,*
    404 U.S. 443 (1972) ............................................ 21

*U.S. v. Walls,*
    787 F. App'x 425 (9th Cir. 2019) ............................................ 21

*U.S. v. Wooten,*
    2020 WL 6119321 (D. Conn. Oct. 16, 2020) ............................................ 10

*Voorhees v. Jackson,*
    35 U.S. 449 (1836) ............................................ 23

**Statutes**

18 U.S.C. § 3553(a) ............................................Passim
18 U.S.C. § 3582 ............................................Passim
21 U.S.C. § 802(44) (2009) ............................................3
21 U.S.C. § 802(57)............................................ 15

21 U.S.C. § 841(a)(1) ................................................................ 2, 14

21 U.S.C. § 851 ........................................................................ 2

28 U.S.C. § 2241 ............................................................... Passim

28 U.S.C. § 2255(a) ............................................................... 23

28 U.S.C. § 2255(e) ........................................................... 7, 23

Wash. Rev. Code § 69.50.4013(1) .......................................... 8

**Rules**

U.S.S.G. § 1B1.13 ............................................................. 9, 10

# I.    INTRODUCTION

In 2009, Javier Hart went to trial on an unremarkable drug-trafficking charge, wholly unaware that he faced a ***mandatory*** life sentence based on two prior drug convictions. Why? His trial attorney never told him. After the conviction but before sentencing, Judge Van Sickle realized the catastrophe and appointed co-counsel from the Federal Defenders, who negotiated a 30-year sentence. Mr. Hart was no first-timer. He earned a lengthy sentence. But he did not earn a 30-year sentence. His crime was run-of-the-mill low-level possession with intent to distribute: it involved no weapon, no threats. The charge resulted from a probation search that turned up 67 grams of methamphetamine and 35 grams of cocaine—mid-level dealing at most. His unusually long sentence arrived only through abysmal legal advice and an unconstitutional prior conviction.

The length of that sentence is not the only extraordinary facet—the two prior drug convictions are both remarkable. The first occurred when Mr. Hart was 19-years old and resulted in just a 6-month sentence; the second was an unconstitutional *Blake* conviction, now vacated. Those prior convictions—one minor; one invalid—were the triggers behind Mr. Hart's unusually long sentence. Today, Mr. Hart would face a 10-year mandatory minimum and a guideline range of 168–210 months. With good-time, he has already served the equivalent of 186-months.

This brief is not requesting leniency. It is requesting fairness. Mr. Hart respectfully asks the Court to find the unique circumstances that produced his unusually long sentence are "extraordinary and compelling" and justify reduction.

## II.   BACKGROUND

**A.    Mr. Hart goes to trial based on horrific mis-advice from counsel, faces mandatory life, and stipulates to a 30-year sentence.**

Mr. Hart is serving a 30-year sentence[2] imposed following trial and two convictions: possession with intent to distribute at least 50 grams of actual methamphetamine (Count 1),[3] and possession with intent to distribute cocaine (Count 2).[4] Before trial, the government filed an information under 21 U.S.C. § 851, noticing two prior state convictions to increase Mr. Hart's mandatory minimums:[5]

| § 851s | | |
|---|---|---|
| **Date** | **Conviction** | **Sentence** |
| November 4, 1994 | Conspiracy to Deliver a Controlled Substance—Cocaine<br><br>Yakima County, Washington | 6 months |
| December 4, 1998 | Possession of a Controlled Substance—Cocaine<br><br>Benton County, Washington | 17 months |

---

[2] ECF No. 134.

[3] *See* 21 U.S.C. § 841(a)(1), (b)(1)(A).

[4] *See* 21 U.S.C. § 841(a)(1), (b)(1)(C).

[5] ECF No. 57.

1    The first conviction, conspiracy, occurred when Mr. Hart was still just a

2    teenager—19-years old.[6] The second conviction, possession, as discussed below, was

3    unconstitutional. But at the time of his federal conviction in 2009, any *felony drug*

4    *offense*—no matter how minor, no matter how little time the defendant served—was

5    sufficient to trigger an 851-enhancement. The definition of *felony drug offense* was

6    broad: any offense "punishable by imprisonment for more than one year" under either

7    state or federal law for "conduct relating to narcotic drugs" and other controlled

8    substances. *See* 21 U.S.C. § 802(44) (2009). Under that expansive scheme, both Mr.

9    Hart's conspiracy conviction and his possession conviction qualified. Today, neither

10    would.

11    The result (as any remotely adequate attorney would have known): Mr. Hart

12    faced a mandatory life sentence.

13    But Mr. Hart's trial counsel wasn't remotely adequate and never told him the

14    risk of going to trial. The government's 851-notice failed to reveal the penalty. Nor was

15    the penalty read to Mr. Hart at his initial appearance, as shown in the penalty slip filed

16    in the docket:[7]

17

18

19

---

[6] *See* ECF No. 118 at 1 (Def. Sent. Mem.).
[7] ECF No. 3. "CAG" stands for *custody of the Attorney General* (i.e., prison).

MOTION TO REDUCE SENTENCE
– 3 –

```
                    PENALTY SLIP


        NAME: JAVIER MANUEL HART

        DOB:


        NUMBER OF COUNTS: _____2_____

        Vio: Ct. 1: 21 U.S.C. § 841(a)(1)
        Possession with Intent to Distribute a Controlled Substance -
        Methamphetamine

            Penalty: CAG minimum 10 years and a maximum of life,
            $4,000,000 fine, or both, 5 years supervised release, denial
            of certain federal benefits pursuant to 21 U.S.C. §§ 862 and
            862a, and $100.00 special assessment.

        Vio: Ct. 2: 21 U.S.C. § 841(a)(1)
        Possession with Intent to Distribute a Controlled Substance -
        Cocaine

            Penalty: CAG 20 years maximum, a $1,000,000 fine, or both,
            minimum 3 years supervised release, and $100.00 special
            assessment.
```

Erroneously believing the mandatory minimum would be 20 years, Mr. Hart proceeded to trial and was found guilty.[8]

The error wasn't lost on the district court. Before sentencing, apparently concerned Mr. Hart was receiving ineffective assistance, Judge Van Sickle ordered "a second attorney to represent the defendant" and appointed Rebecca Pennell from the Federal Defenders.[9] Ms. Pennell filed a sentencing memorandum challenging the mandatory-life sentence under the Eighth Amendment, rightly arguing that his non-violent drug offense was eminently less severe than offenses that compelled similar outcomes (e.g., murder, repeat sex offenses against minors, bank robbery resulting in

---

[8] ECF No. 118 at 4–5 (Def. Sent. Mem.).
[9] *See* ECF No. 98 (Order Re: Appointment of Second Attorney).

MOTION TO REDUCE SENTENCE
– 4 –

death, etc.).[10] Shortly after filing sentencing materials, Ms. Pennell discovered Mr. Hart had never learned he faced a mandatory life sentence. She filed an affidavit from Mr. Hart explaining that he'd proceeded to trial believing he faced a 20-year mandatory minimum, a sentence within the guideline range. Thus, Mr. Hart went to trial not because he was unreasonable or unrepentant, but because he incorrectly believed he had nothing to lose—his guideline range matched the minimum:[11]

> 2. While my case was pending trial, my attorney told me that my minimum sentence was being raised from 10 years to 20. My attorney did not advise me that I was looking at a minimum penalty of life without parole.
>
> 3. My impression that the minimum sentence would be 20 years, rather than 10, did not dissuade me from wishing to go to trial, since 20
>
> Declaration                                                    1

> years was within the guideline range.
>
> 4. Had I known I was facing a mandatory life term, I would have seriously considered my options as to whether or not to take my case to trial.
>
> Dated: 2-26-10
>
> Javier M. Hart

Mr. Hart's trial counsel never claimed otherwise.

---

[10] ECF No. 118 at 15–16 (Def. Sent. Mem.).
[11] ECF No. 128 (Decl. of Javier Hart).

1    At that point, Mr. Hart was trapped in an untenable position. He faced life in a

2    concrete box, avoidable only on the chance of appellate reversal—which even with his

3    trial counsel's failures was a risky bet. With the outcome of any appeal uncertain, Ms.

4    Pennell negotiated a stipulated resolution: a jointly-requested 30-year sentence.[12]

5    Under the stipulation, the government agreed to withdraw one of the two 851-notices

6    in exchange for Mr. Hart waiving his appeal and collateral-review rights, including a

7    § 2255 motion based on an ineffective-assistance-of-counsel claim.[13]

8        After the government withdrew its 851-notice to the possession conviction, Mr.

9    Hart faced a 20-year mandatory minimum (based on the 851-notice for the prior

10    conspiracy conviction) and a guideline range of 210–262 months, a low-end of about 17-

11    years.[14] Part of the bargain, however, was a joint recommendation: 360 months. At

12    sentencing, the court imposed the 30-year jointly-recommended sentence on Count 1,

13    with a concurrent 210-month sentence on Count 2. Mr. Hart filed no appeal.

14

15

16

17    [12] ECF No. 130 at 1 (Post-Trial Sent. Stip.).

     [13] ECF No. 130 at 2 (Post-Trial Sent. Stip.).

18    [14] PSR ¶ 289; *see also* ECF No. 118 at 36 (Def. Sent. Mem.). The presentence report applied a base offense level of 32 based on the weight of actual methamphetamine and cocaine. PSR ¶ 40–42.

19    There were no adjustments for specific offense characteristics, and because Mr. Hart was convicted by a jury, he received no acceptance-of-responsibility reduction. His advisory guideline range at level 32 and criminal history category VI was 210 to 262 months. PSR 289.

**B.    Mr. Hart was guilty of unremarkable drug dealing.**

One of the most compelling pieces of Mr. Hart's close shave with a life sentence is just how unremarkable his crime actually was. In November 2008, Mr. Hart was on state probation and someone tipped police he was dealing methamphetamine.[15] Probation officers went to his house, arrested him in bed, searched his home and car, and found baggies, drug-use spoons, scales, about $2,700 in cash, 67.3 grams of actual methamphetamine and 35.8 grams of cocaine.[16] No gun was involved.[17] (By way of comparison, a steady meth-user may consume 2–3 grams per day of actual meth; so 67 grams of methamphetamine is approximately a 20–30 day supply for one person.)

This is at most mid-level dealing. Yet, his sentence, 360 months, vastly exceeds the average federal murder sentence, which in 2020 was 255 months.[18]

That is not to say Mr. Hart deserved a lenient sentence—he had lengthy criminal history, including illegal firearms possession, bail jumping, third-degree domestic assault, burglary, theft, and other convictions, resulting in 21 criminal history points. Even with that history, a non-violent drug-trafficking sentence that greatly exceeds the typical federal murder sentence is astounding.

---

[15] *See* PSR ¶ 11.

[16] PSR ¶ 32. The methamphetamine was low-purity. Of the two samples, one was under 20% purity and the other was about 66% purity, resulting in 108 grams of methamphetamine mixture, or 67.3 grams of actual methamphetamine.

[17] *See* PSR ¶ 43 (noting no specific offense level characteristics; i.e., no gun enhancement).

[18] *See* U.S. Sentencing Comm'n, *2020 Sourcebook, Table 15*, at 64 (2020) (https://bit.ly/32lbCYq).

**C.    Mr. Hart's post-sentencing procedural history.**

For the Court's awareness, this case was referred via pending litigation in the District of Oregon. On June 21, 2019, while confined at Sheridan Federal Correctional Institution, Mr. Hart filed a *pro se* petition under 28 U.S.C. § 2241 in the District of Oregon,[19] asserting jurisdiction under the so-called "escape hatch" of 28 U.S.C. § 2255(e), which applies when § 2255 relief is "inadequate or ineffective." After appointment of counsel, the Oregon court has stayed the § 2241 petition specifically so Mr. Hart would have the opportunity to seek relief under 28 U.S.C. § 2255 or 18 U.S.C. § 3582 in the first instance here. (Indeed, the Oregon court is keeping tabs on this case and held a status conference in January to check on Mr. Hart's status here.)

While Mr. Hart's habeas petition was pending in Oregon, his case for relief was reinforced by *State v. Blake*, 197 Wash. 2d 170 (2021), in which the Washington Supreme Court held the state drug-possession statute, Wash. Rev. Code § 69.50.4013(1), unconstitutional under both the state and federal constitutions. The court reasoned that the statute criminalized unknowing possession, which the Washington State legislature lacked the power to criminalize, and thus, the statute was beyond the police power of the state and "void." *Id.* at 195. After *Blake*, Mr. Hart's 1998 possession conviction was rendered unconstitutional.

---

[19] *Hart v. Salazar*, No. 3:19-cv-976 (D. Ore. 2019).

1    Mr. Hart is presently 46 years old. He remains incarcerated at FCI Sheridan

2    with a projected release date of July 13, 2034. He has been in continuous federal

3    custody since February 18, 2009—just over 13 years. With good-conduct time credit,

4    he has served the equivalent of a 186-month federal sentence.[20]

5    ### III.  Discussion

6    The Court can reduce Mr. Hart's sentence if "extraordinary and compelling

7    reasons warrant" reduction. When Congress passed § 3582, it intended to give judges

8    wide latitude to reduce sentences—that's why the statute uses broad language: any

9    "extraordinary or compelling" reason would do.

10    Courts have recognized that broad power: "a district court's discretion in this

11    area—as in all sentencing matters—is broad." *U.S. v. Brooker*, 976 F.3d 228, 237 (2d

12    Cir. 2020). There is but one limitation: rehabilitation alone is insufficient. *Id.* at 238

13    ("The only statutory limit on what a court may consider to be extraordinary and

14    compelling is that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary

15    and compelling reason.") (emphasis in original); *see also U.S. v. Aruda*, 993 F.3d 797

16    (9th Cir. 2021) (holding outdated guideline, U.S.S.G. § 1B1.13, does not control).

17    The Sentencing Commission followed Congress in granting broad discretion.

18    Under Application Note 1(D) to § 1B1.13, the guidelines provide a catchall: the Bureau

19    _____

[20] Mr. Hart has served 156 months, which is equivalent to an imposed 186-month sentence
(accounting for 15% good-time credit).

of Prisons can file a motion to reduce for any reason at all. *See* U.S.S.G. § 1B1.13, cmt.

1(D).[21] Judges can, and should, exercise their power just as broadly.

Until a new Sentencing Commission updates § 1B1.13, the sentence-reduction

framework looks like this:



---

[21] Often overlooked in government briefing, the guidelines commentary provides limitless sentence-reduction authority to judges: "Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." In other words, the Sentencing Commission has long authorized sentence reductions for any mixture of extraordinary and compelling reasons deemed appropriate.

In considering whether an extraordinary-and-compelling basis exists, courts consider the totality of circumstances—all the supporting reasons mixed together, not as the government sometimes suggests, each reason considered independently.[22],[23]

## A.    Congress intended district courts to use § 3582 to review "unusually long sentences"—it said so directly.

Congress always intended for the sentence-reduction statute to encompass unusually long sentences like Mr. Hart's. In 1984, Congress passed § 3582(c) as part of the Comprehensive Crime Control Act—the same act that created new mandatory minimums, the Sentencing Commission, and the guidelines and phased out parole.[24] It was a radical penal metamorphosis,[25] and Congress was concerned the new law would

---

[22] *U.S. v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (Courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned persons might bring before them in motions for compassionate release."); *U.S. v. Owens*, 996 F.3d 755, 763 (6th Cir. May 6, 2021) ("The district court . . . should have determined whether the combination of all three factors [changes in First Step Act, the fact defendant received a life sentence for going to trial, and his rehabilitation] warranted compassionate release." Because the district court failed to do so, "we remand to the district court for further proceedings."); *U.S. v. Wooten*, 2020 WL 6119321 at *7 (D. Conn. Oct. 16, 2020) (Noting "no single factor" warranted release, but "several factors combine[d]" did.); *U.S. v. Almonte*, 2020 WL 1812713 at *5 (D. Conn. April 9, 2020) (Noting no single factor warranted release, but "a combination of factors add up to extraordinary and compelling reasons."); *U.S. v. McGee*, 2021 WL 1660251 (N.D. Cal. April 26, 2021) ("The Court acknowledges that each of the above circumstances taken individually would not be sufficient in terms of justifying a reduction in sentence. [] However, collectively, the circumstances are extraordinary and compelling.").

[23] Mr. Hart has filed the perfunctory reduction request with the warden of his facility. *See* Prince Decl., Ex. B (Warden Request) (Feb. 2, 2022).

[24] *See* Sen. Rep. 98-225, at *1, 1983 WL 25404 (Aug. 4, 1983).

[25] *Id.* at *1 (the bill is "the product of a decade long bipartisan effort . . . to make comprehensive improvements to the federal criminal laws").

1   upset the power balance between judges, prosecutors, and the Commission. Indeed,

2   the official Senate report expressly listed that fear: these new "systems may shift

3   discretion from the judges to the prosecutors" and "the Sentencing Commission may

4   have too much power."[26] It was a problem of checks and balances.

5   In part to combat those concerns, Congress created what it explicitly called a

6   "safety valve"—the power to reduce sentences in § 3582. With the resentencing

7   power in judges' hands, this "safety valve[] . . . assure[s] the availability of specific

8   review and . . . ***keeps the sentencing power in the judiciary where it belongs***."[27] Indeed,

9   Congress felt comfortable shuttering the parole commission only because the

10   resentencing task would fall to the courts: "it is unnecessary to continue the expensive

11   and cumbersome Parole Commission" because the new law places "the question

12   whether there is justification for reducing a term of imprisonment" up for "court

13   determination."[28]

14   And the Senate spoke broadly of courts' power to reduce. It recognized there

15   would be cases not just of terminal illness but of "***other*** extraordinary and compelling

16   circumstances justify[ing] a reduction of an unusually long sentence."[29] Unusually long

17   sentences became a reality, and this power was meant to soften the harsh edges.

18   _____

19
[26] Sen. Rep. 98-225, at *60, 1983 WL 25404 (Aug. 4, 1983).
[27] *Id.* (emphasis added).
[28] *Id.* at *121.
[29] Sen. Rep. 98-225, at *55, 1983 WL 25404 (Aug. 4, 1983) (emphasis added).

MOTION TO REDUCE SENTENCE
– 12 –

**B.    Mr. Hart has an extraordinarily long and unusual sentence.**

    **1.    The 30-year sentence was imposed in an extraordinary and unusual fashion.**

Mr. Hart's 30-year sentence for non-violent street-dealing is extraordinary, not just in its severity, but in the bizarre, roundabout way it arrived. Mr. Hart had no viable defense at trial, but his trial attorney failed—in a scarcely-believable lapse—to disclose that a mandatory life sentence would be the inevitable result of conviction. Believing he was facing a low-end guideline range of 210 months and a mandatory minimum of 240 months, Mr. Hart saw no reason to avoid trial. And trial counsel's failures were so obvious, so glaring in the record, that Judge Van Sickle himself determined new co-counsel was needed. In the end, Mr. Hart ended up with a 30-year sentence because his post-conviction counsel was negotiating against the backdrop of a likely life sentence—and all of this caused by trial counsel's woefully inadequate advice.

But by the time new counsel was appointed, Mr. Hart's leverage was nil—the government was holding a trump card in the form of the jury verdicts, and Mr. Hart's only hope was a Ninth Circuit reversal. Even in Mr. Hart's circumstances, that is a risky proposition on which to gamble one's entire life. He had little choice but to accept 30 years.

## 2.   The 30-year sentence is extraordinary long compared to other drug offenders.

Mr. Hart's 30-year sentence is extraordinary in length compared to other drug-trafficking sentences. In 2009, the median length of methamphetamine sentence was 72 months; the average 96.5 months.[30] In 2021, those figures were 72 months and 90 months.[31] Mr. Hart's sentence is five times the median and four times the average—and methamphetamine is already the most severely punished drug in the entire federal system, by far.[32] Even compared to the worst recidivists, Mr. Hart's sentence is an outlier. For drug-trafficking defendants in criminal-history category VI, the median sentence is 120 months; the average 123 months.[33] He is serving three times the average of the worst offenders.

## 3.   The 30-year sentence is extraordinary due to the nature of his two prior convictions that triggered the mandatory-life sentence.

Apart from the extraordinary deprivation of his Sixth-Amendment right to effective counsel, Mr. Hart's sentence is also extraordinary due to the nature of his two

---

[30] *See* U.S. Sentencing Comm'n, *2009 Sourcebook of Federal Sentencing Statistics*, Table 45 (2009) (https://bit.ly/380KvV8).

[31] *See* U.S. Sentencing Comm'n, *2021 Sourcebook of Federal Sentencing Statistics*, Figure D-3 (2021) (https://bit.ly/3qKX5ye).

[32] *Id.* (showing average sentence for power cocaine (68), crack cocaine (69), heroin (60), fentanyl (60)).

[33] *See* U.S. Sentencing Comm'n, *2021 Sourcebook of Federal Sentencing Statistics*, Table 27 (2021) (https://bit.ly/3iPrRSt).

prior convictions serving as 851-enhancements. The first was a minor conviction: a **six** month conspiracy-to-deliver-cocaine sentence—a sentence imposed when he was just a teenager.[34] The second was illegal: a now-vacated *Blake* conviction for mere possession. It is extraordinary that it was those two prior convictions, combined with extraordinarily deficient performance from his lawyer, combined with draconian mandatory-minimum laws that Congress has since repealed, that resulted in a three-decade sentence for run-of-the-mill drug-trafficking. It took bizarre and unjust events for Mr. Hart to arrive where he is.

        **4.    The 30-year sentence is extraordinarily disparate from post-First Step Act sentences.**

Today, a person subject to a single valid 851-enhancment would face a mandatory minimum of just 15-years. *See* 21 U.S.C. § 841(b)(1)(A). But Mr. Hart's prior, for which he was sentenced to just six months, wouldn't even qualify as an enhancement—the new definition of "serious drug felony" requires that a person have served "more than 12 months." *See* 21 U.S.C. § 802(57). Thus, in Congress's judgment, a person in Mr. Hart's position would have **no** 851 enhancements at all, and certainly not a life sentence. If Mr. Hart were sentenced today, he would face the regular 10-year mandatory minimum. That is extraordinary.

---

[34] *See* ECF No. 57.

1    Courts agree an "enormous disparity" between a pre-First Step Act sentencing

2    range and a post-First Step Act sentencing range can qualify as "an extraordinary and

3    compelling reason for relief under §3582(c)(1)(A)." *U.S. v. McCoy*, 981 F.3d 271, 285

4    (4th Cir. 2020) (holding a severe sentence "combined with the enormous disparity

5    between that sentence and the sentence a defendant would receive today, can

6    constitute an 'extraordinary and compelling' reason for relief"). By recognizing

7    changes in the legal landscape as a basis for reduction, courts see the wisdom in

8    considering the "sheer and unusual length of a sentence given under the former

9    sentencing regime" with "the sentence Congress ***now*** believes to be an appropriate

10    penalty for the defendant['s] conduct." *U.S. v. Lii*, 528 F. Supp. 3d 1153, 1164 (D.

11    Haw. 2021) (emphasis added):

| Reduced Penalties = Extraordinary and Compelling | |
|---|---|
| **Case** | **Holding** |
| *U.S. v. Maumau*, 993 F.3d 821(10th Cir. 2021) | Affirming district court's decision to grant a § 3582 reduction based on a gross disparity between pre-First Step Act and post-First Step Act penalty schemes. |
| *U.S. v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (collecting cases) | Finding severe sentence coupled with "enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason" for reduction. |
| *U.S. v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 504 (S.D. Iowa 2020) | "Several courts, including this one, have concluded that drastic sentencing disparities created by sentencing law reforms can be an extraordinary and compelling reason supporting |

| | |
|---|---|
| | release." |
| *U.S. v. Hope*, 2020 WL 2477523 at *4 (S.D. Fla. Apr. 10, 2020) | Granting § 3582 reduction because "Mr. Hope's original, mandatory life sentence represents the type of sentencing disparity the First Step Act was enacted to redress. . . ." |
| *U.S. v. Mondaca*, 2020 WL 1029024 at *5 (S.D. Cal. Mar. 3, 2020) | Reducing mandatory life sentence and noting "the discrepancy between the sentence the Defendant received in 1991 and the sentence he would receive if judgment were pronounced today is significant," and specifically highlighting the individual's prior § 851 "would no longer qualify as an enhanceable offense." |
| *U.S. v. Cantu-Rivera*, 2019 WL 2578272 at *2 (S.D. Tex. June 24, 2019) | Reducing § 851-based life sentence to time-served in part because "the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions." |
| *U.S. v. Moore*, 2021 WL 6071628, at *2 (10th Cir. Dec. 21, 2021) | Finding "gross disparity between [defendant's] sentence and the sentence that a person would receive today for the same conduct" was extraordinary and compelling basis for reduction. |
| *U.S. v. LaFlora*, 2021 WL 1597948, at *1 (D. Kan. Apr. 23, 2021) | Given in part "the radically different sentence which would be imposed today" after the First Step Act, "the court concludes that extraordinary and compelling circumstances exist warranting relief." |
| *U.S. v. Jones*, 482 F. Supp. 3d 969, 979 (N.D. Cal. 2020) | Finding severe sentence and "the gross disparity between his sentence and the sentence that Congress now deems appropriate" after First Step Act qualifies as extraordinary and compelling basis for reduction. |

| | |
|---|---|
| *U.S. v. Bryant*, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020) | "[T]he court finds that Bryant's continued incarceration under a sentencing scheme that has since been substantially amended is a permissible 'extraordinary and compelling' reason to consider him for compassionate release." |
| *U.S. v. Brown*, 457 F. Supp. 3d 691, 703 (S.D. Iowa Apr. 29, 2020) | "[T]he manifest unfairness of keeping a man in prison for decades more than if he had committed the same crime today . . . cuts in favor of a sentence reduction under § 3582(c)." |
| *U.S. v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020) | Granting reduction where defendant was "sentenced to over 32 years in prison for what is now probably a 17-year crime" after the First Step Act. His sentence is "now clearly unfair." |

Indeed, this Court already issued a thoughtful opinion on this issue, holding that the disparity created by the First Step Act is compelling and can justify relief. *See U.S. v. Manzo*, No. 07-cr-2042-WFN, ECF No. 916 at 1 (E.D. Wash. July 29, 2021) ("The disparity between Defendant's guideline range at the time of sentencing and what it would be today is staggering. At the time of sentencing Defendant faced a mandatory minimum of 20 years. The § 851 notice that applied at the time of sentencing no longer would be applicable to Defendant."). In short, Mr. Hart should never have faced a life sentence. And today, people in his position don't. They face a guideline range about half his sentence.

1    Mr. Hart's revised guidelines show why a sentence reduction is warranted. If

2    resentenced, Mr. Hart's guideline range would be 168–210 months.[35] And he has

3    already served the equivalent of a 186-month sentence. Thus, his actual 360-month

4    sentence is more than double the low-end of the guideline range for similarly-situated

5    defendants.

6        These kinds of disparities are, as numerous courts have held, extraordinary and

7    compelling.

8    **C.    The § 3553(a) factors favor a sentence reduction.**

9        The Sentencing Reform Act factors favor reducing Mr. Hart's sentence. ***First***,

10   Mr. Hart has already served a lengthy sentence—more than 13 years. That is far above

11   the median sentence for methamphetamine trafficking: 6 years.[36] *See* 18 U.S.C.

12   § 3553(a)(1) (nature and circumstances of the offense). It falls within the existing

13   guideline range that similarly-situated defendants now face. And beyond the sheer

14   length, Mr. Hart's sentence includes two years of pandemic-induced lockdown, a harsh

15   penalty the sentencing court could never have predicted. Harshness is a factor that the

16   Seventh Circuit has specifically authorized a sentencing judge to consider: "that the

17   harsher the conditions the shorter [the] sentence should be." *U.S. v. Spano*, 476 F.3d

18

19

---

[35] Mr. Hart would be a criminal-history category VI and have a final offense level of 30 (based on 67.3 grams of actual methamphetamine and 35.8 grams of cocaine). *See* PSR ¶ 32.
[36] U.S. Sentencing Comm'n, *2021 Sourcebook, Figure D-3* at 124 (2022) (median sentence is 72 months; average sentence is 90 months) (https://bit.ly/36uGO9m).

1    476, 479 (7th Cir. 2007) (noting merit to argument and that sentencing judge may take

2    it into account, but not mandating it be factored given that it "would complicate

3    sentencing enormously to require" sentences to vary with harshness). And harshness is

4    in fact being considered in sentence-reduction motions. *See, e.g.*, *U.S. v. Armstrong*,

5    2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) (granting sentence reduction in part

6    because "defendants committing similar offenses now, in the time of COVID-19, are

7    receiving vastly lower sentencing recommendations, ***because their time in custody is***

8    ***harsher***") (emphasis added); *see also U.S. v. Noriega*, 40 F. Supp. 2d 1378, 1379 (S.D.

9    Fla. 1999) (reducing sentencing and in part due to security-based "isolation," finding

10   that "the consequences of such deprivation can be serious," and "I suppose we would

11   find that [defendant] has in fact done more time than the nine years which have

12   passed"); *U.S. v. Macfarlane*, 438 F. Supp. 3d 125, 127 (D. Mass. 2020) ("two-week

13   confinement in solitary quarantine in a higher security facility is the equivalent of two

14   months in the Camp to which he was originally assigned"). The sentence he has

15   already served is long enough and harsh enough to meet § 3553's needs.

16       ***Second***, Mr. Hart's 30-year sentence for non-violent drug-trafficking is

17   particularly offensive given that it rested not on the conduct itself but on one prior

18   teenage conviction (resulting in a 6 month sentence) and one that is constitutionally

19   invalid.  While courts can, of course, consider recidivism, Mr. Hart's three-decade

     sentence is untethered from the actual offense conduct.

1    ***Third***, in his 13-years of custody, Mr. Hart's disciplinary records show the

2    strides he has made. His only infractions are for gambling—and the last of those was

3    more than seven years ago.[37] *See* 18 U.S.C. § 3553(a)(1), (2)(D) (characteristics of

4    defendant and rehabilitative needs).

5    ***Fourth***, the extreme disparity between Mr. Hart and other similarly-situated

6    defendants favors a lower sentence under § 3553. Even considering the prior

7    convictions, Congress has now deemed mandatory life too extreme and lowered those

8    penalties in the First Step Act.

9    The government may protest that the provisions of the First Step Act that

10    lowered the mandatory minimums aren't retroactive. And that is true. But Mr. Hart

11    does not seek retroactive application. Rather, the Court must consider disparity—just

12    as it does every time it performs a 3553-analysis. *See* 18 U.S.C. § 3553(a)(6) (courts

13    should impose sentences that recognize "the need to avoid unwarranted sentence

14    disparities among defendants with similar records who have been found guilty of

15    similar conduct"). Mr. Hart's sentence isn't similar to those of other non-violent drug-

16    traffickers, even those with his same criminal history.

17    ***Fifth***, Mr. Hart's sentence is infected by an unconstitutional prior conviction—

18    the now-vacated *Blake* conviction. His sentence may have been a jointly-stipulated

19

---

[37] *See* Prince Decl., Ex. A (BOP Disciplinary History) (showing infractions for conducting a gambling pool, possessing unauthorized money, possessing gambling paraphernalia, all in 2014).

recommendation, but that recommendation flowed directly from the purported existence of **two** possible 851s. At it turned out, that assumption was false: Mr. Hart should have been subject to only one prior 851, his teenage six-month sentence. That kind of infection has long been recognized as warranting correction: when a "sentence [is] founded at least in part upon misinformation of constitutional magnitude," it cannot stand. *U.S. v. Tucker*, 404 U.S. 443, 447 (1972). Constitutionally-suspicious misinformation includes when a prisoner "was sentenced on the basis of assumptions concerning his criminal record which are materially untrue"—like unconstitutional convictions. *Id.*[38] A sentence like Mr. Hart's, one incurred based on the "***threatened application of an unconstitutional sentence enhancement***" is "misinformation of a constitutional magnitude" under *Tucker*. *See U.S. v. Walls*, 787 F. App'x 425 (9th Cir.

---

[38] Indeed, the Supreme Court in *Tucker* faced the same predicament we confront here: a defendant with multiple prior convictions that had been later ruled constitutionally invalid. There, the defendant was sentenced in federal district court with three prior felonies—in Florida (1938), Louisiana (1946), and Florida (1950). *Id.* at 444. But after sentencing, the first two convictions were held "constitutionally invalid" (just like a *Blake* conviction) because the defendant had lacked legal counsel. *Id.* at 446 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). That was a problem, said the Supreme Court. At sentencing, the judge "gave specific consideration to the respondent's previous convictions before imposing sentence upon him"—"[y]et it is now clear that two of those convictions were wholly unconstitutional." *Id.* at 447. It did not matter that the defendant had another still-standing prior felony—the sentencing judge had considered unconstitutional convictions in imposing sentence, and thus, the sentence was "at least in part" sitting atop misinformation "of a constitutional magnitude." *Id.* at 447. Mr. Hart's sentence is likewise "at least in part" based on the threat of a double-851 life sentence that he never should have faced in the first place. Put another way, a 30-year sentence seemed reasonable to the parties and the Court only because they all incorrectly believed Mr. Hart's possession conviction was valid.

1    2019) (finding due process violation where "unconstitutional sentence enhancement

2    leveraged by the United States during plea negotiations was a false premise

3    demonstrably relied upon by the sentencing court") (emphasis added). That is just

4    what happened here: one of the threatened 851s was based on the unconstitutional

5    *Blake* conviction, and that false conviction drove the end resolution, 30 years.

6            The time already served—the equivalent of a 15-year sentence—more than

7    adequately reflects the seriousness of the offense, the need for deterrence, and just

8    punishment. *See* 18 U.S.C. § 3553(a).

9            **D.    This is not a disguised collateral-attack.**

10           In many cases where a defendant seeks a sentence reduction, the government

11   argues that it is somehow a covert habeas motion or some kind of collateral attack that

12   should be raised under the Eighth Amendment or a habeas proceeding or some other

13   arena.[39] That is not the case.

14           Collateral attacks under 28 U.S.C. § 2255 and § 2241 involve challenging the

15   *legality* of a person's detention for some constitutionally-based reason (e.g., ineffective

16   assistance, prosecutorial misconduct, newly-discovered evidence, etc.). *See*, *e.g.*, *Muth*

17   *v. Fondren*, 676 F.3d 815, 818 (9th Cir. 2012) (explaining how § 2255s are the

18

19   [39] *See, e.g., U.S. v. Lawrence*, No. 2:08-CR-177-WFN-1, ECF No. 173 at 2 (E.D. Wash. 2022)
     (claiming defendant "is attempting to use §3582(c)(1)(A) as a substitute for a motion under 28
     U.S.C. §2255 and/or 28 U.S.C. §2241—the normal vehicle for a defendant to mount a post-
     conviction, post-appeal challenge to an illegal sentence").

procedural vehicle for an inmate to challenge detention). A post-conviction collateral challenge, which takes place in an independent civil proceeding, arises in four scenarios:

1) a sentence violated either the Constitution or United States law;
2) the court lacked jurisdiction to impose the sentence;
3) the sentence exceeded the statutory maximum; or
4) the sentence is otherwise subject to a collateral attack.

*See* 28 U.S.C. § 2255(a). If a § 2255 is successful, then a conviction or sentence is vacated and deprived of its normal force and effect.

In contrast, a § 2241 action involves challenging a sentence's execution (e.g., prison conditions,[40] prison sanctions,[41] sentence computation issues,[42] etc.). And in rare situations, § 2241 serves as a statutory back-up for serious errors that cannot be raised under § 2255.[43]

Courts and practitioners colloquially refer to § 2255s and § 2241s as "collateral attacks" because both involve a separate collateral civil proceeding to "deprive" a "previous conviction" of its "normal force and effect." *Parke v. Raley*, 506 U.S. 20, 30

---

[40] *See*, *e.g.*, *Ilina v. Zickenfoose*, 591 F. Supp. 2d 145 (D. Conn. 2008) (recognizing §2241 is proper vehicle for challenging inadequate medical care).

[41] *See*, *e.g.*, *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (recognizing §2241 is proper procedural vehicle for challenging prison disciplinary actions).

[42] *See*, *e.g.*, *Setser v. U.S.*, 566 U.S. 231, 244 (2012) (recognizing §2241 is proper procedural vehicle for time-computation issues).

[43] *See* 28 U.S.C. § 2255(e) (so-called "savings clause" or "escape hatch" allowing petition under § 2241 where § 2255 would be inadequate).

1    (1992) (defining "collateral attack"). Because these attacks challenge the legality of

2    prior judgments, they face stiff procedural hurdles—there is, after all, a "deeply

3    rooted" presumption about a judgment's correctness. *See id.* at 29; *see also Voorhees v.*

4    *Jackson*, 35 U.S. 449, 472 (1836) ("there is no principle of law better settled[] than that

5    every act of a court of competent jurisdiction shall be presumed to have been rightly

6    done, till the contrary appears").

7         In this proceeding under § 3582, Mr. Hart doesn't attack his conviction. He

8    doesn't allege his sentence (1) violated the Constitution or United States law; (2) was

9    imposed without jurisdiction; (3) exceeded the statutory maximum; or (4) is otherwise

10   deficient, as § 2255 actions contemplate. Nor does Mr. Hart allege BOP improperly

11   executed his sentence, as § 2241 actions contemplate.

12        Mr. Hart seeks nothing more than a sentence reduction—a reduction that

13   Congress statutorily authorized this Court to perform—without any finding that the

14   original conviction or sentence were legally invalid. If granted, Mr. Hart's conviction

15   remains as intact as the day the jury convicted him.

16        That is precisely what Judge Nielsen held when confronted with this argument:

17   "The Court disagrees with the Government's assertion that the § 3[5]82(c)(1)(A)

18   motion is a procedural end run around the bar against successive § 2255 motions."

19   *U.S. v. Lawrence*, No. 2:08-CR-177-WFN-1, ECF No. 175 at 2 (E.D. Wash. 2022). The

reason is simple: the defendant's motion "does not allege that the original sentence

MOTION TO REDUCE SENTENCE

– 25 –

1    was unlawful or unconstitutional; rather, the motion asserts that despite the legality of

2    the sentence, Defendant seeks release due to extraordinary circumstances." *Id.* And

3    that is what Mr. Hart raises here—a lawful request for a sentence reduction.

## IV.   CONCLUSION

4

5           For the reasons above, Javier Hart respectfully requests that the Court reduce

6    his sentence and impose an appropriate term of supervision.

7    Dated: May 2, 2022.

8                                   Federal Defenders of Eastern Washington & Idaho
                                    Attorneys for Javier Hart

9
                                    s/Colin G. Prince
10                                  Colin G. Prince, WSBA No. 43166
                                    10 North Post Street, Suite 700
11                                  Spokane, Washington 99201
                                    t: (509) 624-7606
12                                  f: (509) 747-3539
                                    Colin_Prince@fd.org

13

14

15

16

17

18

19

1

## Service Certificate

2      I certify that on Javier Hart, May 2, 2022, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF System, which will notify Assistant

4  United States Attorneys: Jane Kirk, Richard Barker, and Joseph Harrington.

5                                   s/Colin G. Prince
                                   Colin G. Prince, WSBA No. 43166
6                                   10 North Post Street, Suite 700
                                   Spokane, Washington 99201
7                                   t: (509) 624-7606
                                   f: (509) 747-3539
8                                   Colin_Prince@fd.org

9

10

11

12

13

14

15

16

17

18

19